IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Heather Eibach,                          :
                        Petitioner       :
                                         :
            v.                           :   No. 1629 C.D. 2017
                                         :   SUBMITTED: February 23, 2018
Workers' Compensation Appeal             :
Board (Commonwealth of                   :
Pennsylvania, Pennsylvania               :
Liquor Control Board),                   :
                        Respondent       :


BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                              FILED: April 11, 2018


Heather Eibach (Claimant) petitions for review of an Order of the Workers'
Compensation Appeal Board (Board) that affirmed in part and reversed in part the
decision of a Workers' Compensation Judge (WCJ). We quash Claimant's Petition
for Review as untimely.

Claimant worked full-time for the Commonwealth of Pennsylvania Liquor
Control Board (Employer) as a cashier/laborer beginning in December 2007. WCJ's
Hearing, Notes of Testimony (N.T.), 6/9/16, at 9; WCJ's Op.,10/31/16, Finding of
Fact (F.F.) No. 5. Thereafter, she sustained several work-related injuries over a
period of years.

In 2009, Claimant injured her back[1] while working for Employer, which required surgery in 2010. Claimant also injured her neck in 2012 or 2013, and was out of work for a "few months."[2] N.T., 6/9/16 at 11. Claimant had another work-related incident on July 29, 2014, where she felt a "twinge" in her neck and right shoulder. N.T., 6/9/16 at 10-13; Reproduced Record (R.R.) at 42. Claimant was reassigned to light duty after experiencing this "twinge" but did not miss any time at work. Claimant returned to full duty work on September 2, 2014. N.T., 6/9/16 at 13.

Claimant thereafter sustained another work-related injury to her back on April 24, 2015. WCJ's Op., F.F. No. 3. R.R. at 41; *see also* R.R. at 148. According to the Claimant, on that day, she was lifting cases of liquor weighing approximately 65 pounds when she experienced sudden pain in her neck and right arm. R.R. at 35. This injury was accepted by Employer via a Notice of Compensation Payable (NCP) as **"thoracic sprain/strain."**[3] WCJ's Op., F.F. No. 3.

After the April 24, 2015 work injury, Claimant was seen by Mark Albert, M.D. at Medicus Urgent Care. At the request of Claimant, Dr. Albert referred Claimant to Alan Gillick, M.D. who is board certified in orthopedic surgery. R.R. at 155. On April 29, 2015, Dr. Gillick examined Claimant for thoracic and cervical issues. Bd. Op. at 4; R.R. at 192. On May 18, 2015, Claimant again went to see Dr. Gillick because Claimant was concerned that movements caused numbness and tingling in her left hand. Deposition of Dr. Gillick (Dr. Gillick Dep.) 4/1/16, at 11;

---

[1] The record does not indicate the nature of the back injury.
[2] The record does not indicate if this neck injury was work related.
[3] Thoracic spine refers to the upper back area.

2

R.R. at 82; WCJ Op., F.F. No. 5; Bd. Op. at 4. At this point, Dr. Gillick recommended a cervical MRI. *Id*.

On June 2, 2015, Claimant underwent an MRI, which indicated that Claimant suffered from degenerative disc protrusions with osteophytes causing cervical spine compression. WCJ's Op., F.F. No. 5; R.R. at 82.

On June 8, 2015, Claimant was once again examined by Dr. Gillick, who found that Claimant had cervical stenosis[4] and recommended surgery. WCJ's Op., F.F. No. at 5; Bd. Op. at 4-5. On June 19, 2015, Dr. Gillick ordered a CT scan of Claimant's cervical spine, which showed that there were bony protrusions present in Claimant's spinal canal. Dr. Gillick Dep. 4/1/16, at 15.

On June 24, 2015 Claimant returned to Dr. Gillick for another examination. Based upon Claimant's symptoms, as well as his examination of her MRI and CT scan, Dr. Gillick scheduled Claimant to undergo a cervical laminoplasty[5] on September 10, 2015. Dr. Gillick Dep. 4/1/16, at 15-16.

On September 2, 2015, Employer's physician, Allister Williams, M.D. who is board certified in orthopedic surgery, conducted an independent medical examination (IME) on Claimant. Bd. Op. at 5; R.R. at 193. At the time of Dr. Williams' IME, Dr. Williams determined there was no evidence of an ongoing thoracic injury. R.R. at 114. He also determined that the cervical strain/sprain had

---

[4] "[C]ervical stenosis means that the cervical spinal cord passes through a boney channel in the vertebrae that had a limited amount of space. [] Typically the spinal cord is surrounded by fluid, so there's actually a cushion of extra space. So if anything further narrows that channel such as discs protruding, bone spurs, et cetera; that starts to narrow the channel sufficiently that it starts to impiuge [sic] into the spinal cord, it will cause malfunction of the spinal cord. *The way I explain it to patients it's like a short circuit in a wire*". Dr. Gillick Dep. 4/1/16 at 13-14 (emphasis added.)

[5] A cervical laminoplasty is a procedure through which a surgeon attempts to preserve the normal range of motion of the patient's neck by expanding the bony channel where the spinal cord passes through in order to relieve the pressure and allow the spinal cord to function normally again. Reproduced Record (R.R.) at 47.

resolved. WCJ's Op., F.F. No. at 11; Bd. Op. at 6. Dr. Williams did not find any evidence of an aggravation of the degenerative cervical stenosis. WCJ's Op., F.F. No. at 11; Deposition of Allister Williams, M.D., (Dr. Williams' Dep.) 6/3/16, at 16, 25-26: R.R. at 115-116. 194.

On September 10, 2015, Claimant underwent the aforementioned cervical laminoplasty. R.R. at 47. Per Dr. Gillick, this surgical procedure was prompted by *her cervical stenosis.* R.R. at 46.

On November 13, 2015, Claimant filed a review petition with the WCJ seeking to expand the nature of her April 2015 work injury to include *cervical injury* (not simply thoracic sprain and strain) which necessitated her cervical laminoplasty surgery. R.R. at 2-3; WCJ's Op., F.F. No. 2.

On December 7, 2015, Employer filed a Petition to Terminate Claimant's workers' compensation benefits with the WCJ, pursuant to the affidavit of Dr. Williams, which was based upon Dr. Williams' IME of Claimant. WCJ's Op., F.F. No. 1.

Thereafter, at his deposition, Dr. Williams testified that the cervical laminoplasty performed on Claimant was not causally related to her work injury of April 24, 2015. R.R. 102, 117; see *also* R.R. at 35, 38. Dr. Williams testified that he examined Claimant, reviewed her prior medical records and treatments, and obtained a full history of her April 24, 2015 work injury. R.R. at 35-38, 102-103. He noted a past surgical history significant for an L5-S1 discectomy.[6] R.R. at 36, 108. Dr. Williams detailed the findings in the MRI of June 2, 2015, and a CT scan of June 9, 2015, which revealed osteophyte complex. He explained that osteophytes are essentially old herniations that calcify over time and take years to develop into a

---

[6] An L5-S1 discectomy involves surgery to the lower back.

4

visible osteophyte complex. R.R. at 111. According to Dr. Williams, the Claimant is an individual who has advanced degenerative spinal stenosis, and the cervical laminoplasty was related to Claimant's advanced degenerative spinal stenosis, not her April 24, 2015 work-related injury. Dr. Williams' Dep. 6/3/16, at 26-27: R.R. at 116-117. Dr. Williams opined that on April 24, 2015, Claimant sustained a work-related cervical sprain/strain that had resolved and that required no further treatment. Therefore, with regard to Claimant's cervical **strain/sprain**, Dr. Williams believed it was no longer an impediment, and thus Claimant could return to full duty work. Dr. Williams' Dep. 6/3/16 at 26-28; R.R. at 116-118.

The WCJ accepted Claimant's testimony as to the occurrence of the April 24, 2015 work incident. However, the WCJ rejected the testimony of Dr. Gillick and accepted the testimony of Dr. Williams, noting that Dr. Williams also relied on the diagnostic studies performed on and after April 2015 that show no herniation of her C7-T1, which is located at the very bottom of the neck.[7] The WCJ also determined that, similar to Dr. Williams' conclusion, Dr. Gillick had concluded that Claimant's "problems extend from degenerative conditions and her current complaints are not related to an acute injury,"[8] but diagnostic studies performed in June 2015 show extensive degeneration and there has been no documentation to establish that Claimant had an aggravation of that condition or a herniation resulting in the need for surgery. The WCJ accepted Dr. Williams' testimony that Claimant did not sustain an aggravation of her degenerative cervical condition, that her cervical problems were long-term degenerative issues that were not causally related to her

---

[7] See R.R. at 37, 84, 109-111; WCJ Op., F.F. No. at 10.

[8] WCJ Op., 10/31/16, Finding of Fact (F.F.) No. 15.

5

work, and that Claimant had fully recovered from any strain/sprain as a result of the work incident. WCJ's Op., F.F. Nos. 10, 15-17.

By a decision and order circulated October 31, 2016, the WCJ denied Claimant's review petition, concluding that Claimant failed to establish that the injury description should be amended to include cervical injury necessitating her laminoplasty. The WCJ granted Employer's Termination Petition, determining that Employer established that Claimant had fully recovered "from any sprain/strain as a result of the work injury of April 24, 2015." R.R. at 174-182, 189.

Claimant appealed the WCJ's October 31, 2016 Decision and Order to the Board. On October 4, 2017, the Board issued an Order reversing the denial of the Petition for Review, to the extent the WCJ had failed to modify the description of injury to include a cervical strain/sprain. R.R. at 189. However, the Board affirmed the WCJ's order granting Employer's petition for termination of benefits as of September 2, 2015 because Dr. Williams credibly opined that, as of the date of his examination of Claimant, he concluded that she had fully recovered from the cervical sprain/strain and there was no evidence of any ongoing thoracic injury. The Board also found that Claimant is not entitled to litigation costs because there is no indication that Claimant obtained a financial benefit for the work injury, including the work injury in its amended form. R.R. at 197-199.

Claimant now petitions this Court for review of the Board's decision.[9] On appeal, Claimant argues that the Board erred in refusing to award litigation costs; the WCJ erred in refusing to order Employer to produce an IME report from 2013;

---

[9] Our scope of review is limited to determining whether findings of fact are supported by substantial evidence, whether an error of law has been committed, or whether constitutional rights have been violated. Section 704 of the Administrative Agency Law, 2 Pa. C.S. §704; *Meadow Lakes Apartments v. Workers' Comp. Appeal Bd. (Spencer)*, 894 A.2d 214, 261 n.3 (Pa. Cmwlth. 2006).

6

and the WCJ erred in rejecting medical testimony that the 2015 injury accelerated Claimant's need for surgery. Petitioner's Br. at 4.

As a preliminary matter, we must address this Court's jurisdiction. Employer argues that Claimant untimely filed her Petition for Review. Employer asserts that the Board entered its Opinion and Order on October 4, 2017, and that therefore, the deadline to file the Petition for Review with this Court was November 3, 2017. Employer asserts that this Court's docket reflects that the Petition for Review was received on November 6, 2017, which was 3 days beyond the 30 day period within which to file. Consequently Employer argues that this Court must dismiss Claimant's Petition for Review. Employer's Br. at 4, 22.

The Certified Record (C.R.) contains proof that the Board issued the appealed order on October 4, 2017. C.R., Item No. 12. Claimant mailed her Petition for Review, in an envelope on which was affixed Pitney Bowes postage.[10] This Court received that envelope on November 6, 2017. *See* Cmwlth. Ct. Docket, Petition for Review. Upon examination of the date stamp on the Petition for Review, this Court ordered the parties to address the timeliness of Claimant's appeal in their principal briefs on the merits. Cmwlth. Ct. Order of 11/21/17 (Covey, J.). Despite this Court's Order, Claimant has nevertheless failed to address the timeliness issue.

A petition for review from an appealable quasi-judicial order must be filed within 30 days after the entry of the order. Pa. R.A.P. 1512(a)(1); *see DeWitt v. Unemployment Comp. Bd. of Review*, 6 A.3d 586, 588 (Pa. Cmwlth. 2010) (once the 30-day window within which to perfect a petition for review expires, the court may not extend the 30-day window for a claimant to perfect a petition and Commonwealth Court's jurisdiction is relinquished).

---

[10] Pitney Bowes is a private company that affixes postage via postage meters to mail that is then deposited with the United States Postal Service for delivery.

Pa. R.A.P. 1512(a)(1) states:

Rule 1512.  Time for Petition for Review

(a)  Appeals authorized by law. Except as otherwise prescribed by subdivision (b) of this rule [related to special appellate provisions]:

(1) A petition for review of a quasi-judicial order, or an order appealable under 42 Pa. C.S. §763(b) (awards of arbitrators) or under any other provision of law, *shall* be filed with the prothonotary of the appellate court within 30 days after the entry of the order.

Pa. R.A.P. 1512(a)(1) (emphasis added).

Further, in order to prove its timeliness, a mailed petition for review must be accompanied by "a United States Postal Service Form 3817, Certificate of Mailing [Form 3817], or other similar *United States Postal Service form* from which the date of deposit in the mail can be verified."  Pa. R.A.P. 1514(a) (emphasis added).

Pa. R.A.P. 1514(a) has two critical requirements for using Form 3817.  First, the form must identify the case to which it pertains.  *Id*.  Second, the party must include the form in the mailing, or mail it separately to the prothonotary.  *Id.*  The clear significance of these requirements is that they enable the prothonotary to view the case docket number, as well as the United States Postal Service postmark on the Form 3817 and immediately determine whether a filing is timely.  *See Miller v. Workers' Comp. Appeal Bd. (Sch. Dist. of Harrisburg)*, 24 A.3d 1094 (Pa. Cmwlth. 2011).  Thus, a privately placed postmark does not fix the date of mailing, unless accompanied by an appropriate United States Postal Service form.  *Chapman v. Unemployment Comp. Bd. of Review*, 163 A.3d 1152, 1156 n.9 (Pa. Cmwlth. 2017).

Here, examination of this Court's docket and case file shows no evidence of a Form 3817 or other United States Postal Service form from which the *date of deposit* in the mail can be verified.  At the time this Court received Claimant's

8

Petition for Review, the only evidence as to the date of mailing was the private Pitney Bowes postmark on the envelope. Claimant did not include a copy of the appropriate United States Postal Service form in her appeal document mailed to this Court, nor did she mail it separately to the Court. Rule 1514(a) of the Pennsylvania Rules of Appellate Procedure does not deem the date of deposit with a private shipping and mailing company and its private timestamp as the date of filing with the prothonotary. The date of receipt of Claimant's Petition for Review by this Court governs here and consequently, Claimant filed her Petition for Review *beyond* the 30 day time period within which to file.[11] Once the 30 day period has lapsed, without explanation or evidence otherwise, we lack jurisdiction to consider Claimant's Petition for Review. *See DeWitt,* 6 A.3d 586, 588. Furthermore, as the Claimant has failed to provide any explanation for her untimely filing as required by this Court's Order of November 21, 2017 (Covey, J.), her petition is untimely and we cannot address the merits of her petition.

Accordingly, we quash Claimant's Petition for Review.

_____
ELLEN CEISLER, Judge

---

[11] Pursuant to 1 Pa. Code, §1908, the weekends (and legal holiday(s)) are only taken into computation when the last day of a time period falls on a Saturday, Sunday or holiday. There is no issue with the deadline falling on a weekend or holiday in this matter.

9

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Heather Eibach,        :
     Petitioner    :
             :
    v.         : No. 1629 C.D. 2017
             :
Workers' Compensation Appeal  :
Board (Commonwealth of    :
Pennsylvania, Pennsylvania   :
Liquor Control Board),     :
     Respondent   :

## O R D E R

AND NOW, this 11th day of April, 2018, the Petition for Review filed by Petitioner Heather Eibach is hereby QUASHED.

_____
ELLEN CEISLER, Judge